## Continental Insurance Company v. Turner.

(Decided January 17, 1928.)

### Appeal from Graves Circuit Court.

1. Insurance.—In absence of any knowledge of limitation on local agent's authority, insurance company establishing local agency must be held responsible to parties with whom they transact business for acts and declarations of agent within apparent scope of his employment.

2. Insurance.—In action on fire insurance policy, evidence held, to show that agent writing policy on farm property was local agent of insurer, and not mere soliciting agent.

3. Insurance.—No limitation on local agent's authority being communicated to insured, he had right to rely on agent's statement when he reported fire to agent that it was not necessary for insured to furnish proofs of loss.

4. Insurance.—In action on fire insurance policy, question whether insurer through its local agent waived requirement of proofs of loss held for jury.

5. Insurance.—In action on fire insurance policy, instruction that jury should find for defendant insurer, unless they believed from evidence that after destruction of property by fire insured reported fire to local agent and asked him if it was necessary to do anything else, and agent stated that it was not necessary to furnish proof of loss, held proper.

GORDON & LAURENT, T. M. GALPHIN, JR., and J. E. WARREN for appellant.

HOLIFIELD, GARDNER & McDONALD for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

The Continental Insurance Corporation issued to Charles O. Turner a policy insuring his dwelling house in the sum of $400, and his stock barn in the sum of $200, for one year from December 3, 1925. The property burned on December 31, 1925, and this action was brought by Turner to recover on the policy. The company, by its answer, pleaded that the policy contained the following provisions:

"In case of loss the assured shall within fifteen days give this company, at its office in Chicago or New York, written notice thereof, and shall within sixty days from date of the loss render to its office aforesaid a particular account of such loss, signed and sworn to by the assured only (except in case of death, and then by the legal representatives), stating the date and circumstances of same, the exact nature of the title and interest of the assured, and of all others in the property, by whom and for what purpose any building herein described was occupied at the time of the loss, all incumbrances on the property, and all other insurance, whether valid or not, covering any portion of said property; and shall furnish this company an itemized statement of personal property, and plans and specifications, and an itemized estimate of the buildings, by some reliable and competent builder, and shall also furnish the cer-

tificate of two disinterested neighbors and of the nearest magistrate, certifying their belief that the statements are true, and that the assured has without fraud sustained the amount of loss set forth in said proofs. . . . All claims for any loss or damage shall be forfeited by failure to furnish proofs of such loss or damage within the time and in the manner above provided.''

It alleged that it did not extend the time for filing proofs of loss and that the plaintiff failed to furnish it, within 60 days from the date of the fire, any proofs of loss. The plaintiff replied, in substance, that the defendant had waived the requirement as to proofs of loss; that on the next day after the fire he went to the local agent of the defendant in Mayfield and notified him of the fire and asked him if it was necessary for him to do anything else in order to entitle him to collect from the defendant under his policy the loss sustained, and the agent notified him he had done all that was necessary for him to do and that he would report to his principal and in a few days an adjuster would visit him and make a settlement with him, and that after misleading him in this way the defendant, after 60 days, denied all liability under the policy. The case came on for trial before a jury, who found for the plaintiff; the court refused a new trial; the defendant appeals.

Practically the only question made on the appeal is that the court should have instructed the jury peremptorily to find for the defendant under the evidence. Turner's testimony, put in narrative form, is in these words:

''Emerson, the local agent of the company, delivered the policy and collected the premium. On the next day after the fire I came and reported it to him. He said nothing else was necessary for me to do; that the company didn't require any more to be done. He told me two or three times that there was not anything necessary to do. He said he would notify the company—the company would send out an adjuster. Every time he told me it would not be necessary to file proof of loss. This ran along for more than 60 days, and then I received a letter from the company stating that they denied all liability under the policy as I had furnished no proof of loss.''

The local agent Emerson testified in chief as a witness for the plaintiff substantially as Turner. On cross-examination he did not make his statements quite as broad as Turner, but nowhere denied that Turner asked him if it was necessary for him to do anything further and he told him that it was not necessary to do anything. Under this evidence the circuit court gave the jury this instruction:

"The court instructs the jury that they will find for the defendant, Continental Insurance Company, unless they believe from the evidence that, after the destruction of the property herein by fire, the plaintiff, Turner, reported and notified Emerson, the agent of the defendant, Continental Insurance Company, within 60 days, that said property had been destroyed, and further asked said agent if he was required to do anything else in order to perfect his claim against the defendant, Continental Insurance Company, and if he was required to file a statement with said company as to said loss; and you further believe from the evidence that the agent of the defendant company stated and notified him that it was not necessary for him to do anything else and not necessary for him to get up a statement of proof of loss to be filed with said company; and if you so believe, then you will find for the plaintiff, Turner, the sum of six hundred ($600.00) dollars, with interest at the rate of 6 per cent. from May 7, 1926."

The appellant insists that this instruction should not have been given and that the court should have instructed the jury peremptorily upon the evidence to find for the defendant on the ground that it was not within the authority of the local agent Emerson to waive the requirement of the policy as to proof of loss. Put in narrative form, Emerson testified as follows on this subject:

"I was the agent at Mayfield of the Continental Insurance Company in December, 1925; I had been such agent about seven years. Our firm was Emerson & Black. As agent for the Continental Insurance Company our duties were to write insurance in the county and in town, too. As to farm property, our duties were to survey the property, and they gave me privileges of writing policies in Mayfield. I took the application of Turner and mailed it to the

company, and they issued the policy and sent it to us, and we mailed it to Turner. We collected the premium.''

The application was dated December 3, 1925; the premium was paid on that day, and the policy took effect from that day. While Emerson states that he did not write policies on farm property, there is no evidence that there was any limitation upon his authority in this class of risks except that the application was to be approved by the company. So far as appears after the application was approved and the policy issued, his duties in this class of cases were precisely the same as in other cases. He was the only representative of the company in the county, and Turner, who was a farmer living some distance in the county, would naturally look to him as the representative of the company. In the absence of any knowledge of limitation upon his authority, it is bound by the acts of its agent done within the apparent scope of his authority. In Union Mut. Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617, the United States Supreme Court thus well stated the rule:

"The powers of the agent are prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal."

In Phœnix Ins. Co. v. Spiers & Thomas, 87 Ky. 297, 8 S. W. 453, 10 Ky. Law Rep. 254, this court, following the above rule, said:

"The tendency of recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law. The maxim, 'Qui facit per alium facit per se,' should apply with peculiar force to the acts of an insurance agent. He usually represents a company remotely located. Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him. He is generally regarded as having

full power in reference to it. Being usually the only man upon the ground having anything to do with it, the persons insured in his company, with few, if any exceptions, would, in the absence of notice that his powers were limited, regard his statement as to any matter relative to such insurance as authoritative, and any notice to him as to it as sufficient. They rarely know anything of the company or of its officers, who issue the policies, and look to the agent through whom they have obtained the insurance as the complete representative of the company in everything connected with that insurance.''

This was followed in Wright v. Northwestern Ins. Co., 91 Ky. 214, 15 S. W. 242, 12 Ky. Law Rep. 850; Mattingly v. Springfield Ins. Co., 120 Ky. 768, 83 S. W. 577, 26 Ky. Law Rep. 1187; Ætna Ins. Co. v. McCullagh, 185 Ky. 665, 215 S. W. 821; Standard Ins. Ass'n v. Henson, 201 Ky. 230, 256 S. W. 414; Hurst Home Ins. Co. v. Ledford, 207 Ky. 212, 268 S. W. 1090. While there are some cases holding that a mere soliciting agent has no power to waive the requirement as to proof of loss, it does not appear here that Emerson was a mere soliciting agent. On the contrary, it appears that he was the local agent of the company and the only person with whom the insured came in contact representing it. He issued policies in certain cases and was the local agent of the company in the county. No limitation upon his authority being communicated to the insured, he had a right to rely upon Emerson's statement. In National Fire Ins. Co. v. U. S. Building Ass'n, 54 S. W. 714, 21 Ky. Law Rep. 1207, this court held that an insurance company would waive the stipulation in a policy as to proof of loss if it acted in such a manner as to authorize a reasonably prudent person to believe that it did waive the requirement, and that in that event the insured need not make and forward to it the proof of loss. In Continental Ins. Co. v. Simpson, 220 Ky. 167, 294 S. W. 1048, the insured had notice that the agent's authority was limited, but in the absence of such notice the agent's acts are the acts of the company. North River Ins. Co. v. Rawls, 185 Ky. 509, 214 S. W. 925; Massock v. Royal Ins. Co., 196 Ill App. 394; Lusk v. American Ins. Co., 80 W. Va. 39, 91 S. E. 1078; O'Connor v. Maryland Ins. Co., 287 Ill. 204, 122 N. E. 489, 3 A. L. R. 787; Mangiameli v. Southern Ins. Co., 111 Neb. 801, 197 N. W. 946.

In Fidelity, etc., Co. v. Cooper, 137 Ky. 544, 126 S. W. 111, where a like defense was relied on, the court, affirming a judgment for the plaintiff, thus stated the facts:

"The first question made on the appeal is that the plaintiffs did not furnish the company proofs of loss as required by the policy. On this matter the facts are these: The insurance had been obtained at Corbin from W. C. Killinger, who represented the company there as a solicitor of insurance. He took the application and was the only agent of the company that the insured had any dealings with. Killinger forwarded the application to the home office, and the policy was issued there. After Cooper's death the beneficiaries applied to Killinger for the necessary blanks to make out their claim. He gave them what he called a 'death certificate,' telling them to fill it out and bring it to him, and he would send it to the company. This they did, and returned the paper to Killinger, who sent it to the company. This paper stated the facts substantially as we have given them, but was not sworn to. Afterwards Killinger told the widow to write a letter to the company stating, in effect, the same facts, and giving the names of the persons who knew the facts as to the accident, and the names of the doctors who had treated the assured, and the undertaker who had buried him. This she did; the paper being signed by her but not sworn to. The company made no objection to either of these papers because they were not sworn to, and Killinger told the beneficiaries that they were all that was necessary."

The testimony as to the agent's authority not being controverted, the circuit court properly refused a peremptory instruction in favor of the defendant and properly gave the instruction above quoted.

Judgment affirmed.